E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorney
Public Corruption & Civil Rights Section
IAN V. YANNIELLO (Cal. Bar No. 265481)
Deputy Chief, General Crimes Section
    1500/1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:    (213) 894-8452/3667
    Facsimile:    (213) 894-0141
    E-mail:    thomas.rybarczyk@usdoj.gov
                ian.yanniello@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>            v.<br><br>MICHAEL MCDONAGH,<br><br>        Defendant. | No. CR 22-56-DOC-1<br><br>PLEA AGREEMENT FOR DEFENDANT MICHAEL MCDONAGH |

    1.    This constitutes the plea agreement between MICHAEL MCDONAGH ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

    2.    Defendant agrees to:

        a.    At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to count three of the

1  indictment in United States v. MICHAEL MCDONAGH, CR No. 22-56-DOC-1,

2  which charges defendant with wire fraud, in violation of 18 U.S.C.

3  § 1343.

4          b.   Not contest the Factual Basis agreed to in this

5  agreement.

6          c.   Abide by all agreements regarding sentencing contained

7  in this agreement.

8          d.   Appear for all court appearances, surrender as ordered

9  for service of sentence, obey all conditions of any bond, and obey

10 any other ongoing court order in this matter.

11         e.   Not commit any crime; however, offenses that would be

12 excluded for sentencing purposes under United States Sentencing

13 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

14 within the scope of this agreement.

15         f.   Be truthful at all times with the United States

16 Probation and Pretrial Services Office and the Court.

17         g.   Pay the applicable special assessment at or before the

18 time of sentencing unless defendant has demonstrated a lack of

19 ability to pay such assessments.

20                        THE USAO'S OBLIGATIONS

21    3.   The USAO agrees to:

22         a.   Not contest the Factual Basis agreed to in this

23 agreement.

24         b.   Abide by all agreements regarding sentencing contained

25 in this agreement.

26         c.   At the time of sentencing, move to dismiss the

27 remaining counts of the indictment as against defendant.  Defendant

28 agrees, however, that at the time of sentencing the Court may

                                 2

consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

## NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in count three, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, the following must be true: (1) defendant knowingly participated in, devised, or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts; (2) the statements made as part of the scheme were material, that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property; (3) defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is: 20 years' imprisonment; a three-year period

of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

8.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the conviction in this case makes it practically inevitable

and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

9.  Defendant understands that defendant will be required to pay full restitution to the victims of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.

1

FACTUAL BASIS

2      10.  Defendant admits that defendant is, in fact, guilty of the

3 offense to which defendant is agreeing to plead guilty.  Defendant

4 and the USAO agree to the statement of facts provided below and agree

5 that this statement of facts is sufficient to support a plea of

6 guilty to the charge described in this agreement and to establish the

7 Sentencing Guidelines factors set forth in paragraph 12 below but is

8 not meant to be a complete recitation of all facts relevant to the

9 underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11      Beginning on a date unknown and continuing through on or about

12 May 16, 2019, in Los Angeles, Orange, and Riverside Counties, within

13 the Central District of California, and elsewhere, defendant, and his

14 co-schemers ANTONIO DUARTE, CHRISTOPHER JAMES VANNOY, FRANK ANTHONY

15 MOLINA, and RUBEN ORTIZ (collectively, "co-schemers"), knowingly

16 participated in and executed a fraudulent telemarketing scheme with

17 each other and others known and unknown to obtain money and property

18 by means of intentional material false or fraudulent pretenses,

19 representations, or promises, and the concealment of material facts.

20 To execute this scheme, the co-schemers used interstate wires.  At

21 all relevant times, defendant and his co-schemers acted with the

22 intent to defraud.

23      As part of their scheme, defendant and co-schemers DUARTE,

24 VANNOY, and ORTIZ controlled and/or managed various telemarketing

25 companies, including Global Transfer, Inc. ("Global Transfer"),

26 Global Transfer SoCal, Inc. ("GTS"), Nationwide Transfer ("NT"), and

27 Nationwide Exit Specialist, Inc. ("NES" and collectively referred to

28 as the "Telemarketing Companies").  Through the Telemarketing

6

Companies, the co-schemers contacted potential victims who were timeshare owners and offered to help them terminate their timeshare interest for a fixed fee.  In truth, during the scheme, the co-schemers had no intention of relieving the timeshare owners of their timeshare obligations for a fixed fee, but rather intended to obtain as much money as they could from the victims through fraud, including the following materially false and fraudulent representations and actions, among others:

a.    That for a fee, the Telemarketing Companies would secure a large "settlement" payment for the victim based on litigation against the victim's timeshare company;

b.    That for a fee, the Telemarketing Companies would secure a large "restitution" payment from the victim's timeshare company because the timeshare company had purportedly rented out the victim's timeshare property without the victim's permission;

c.    That any additional fees being requested by the co-schemers would be refunded to the victim once the victim's timeshare company paid the settlement and/or restitution payment; and

d.    That the victims could not communicate with their timeshare company, including inquiries related to the "restitution" and/or "settlement" payments the co-schemers promised because the victim's timeshare company purportedly required the victim to sign a non-disclosure agreement.

The co-schemers also omitted and concealed material facts from the victims, including the fact that none of the payments sought by the Telemarketing Companies were used for the purpose of obtaining restitution or settlement payments from the timeshare companies, but rather were used for the purpose of personally enriching the co-

1   schemers.  To conceal their fraud and lull victims into inaction, the

2   co-schemers would also frequently cause victims' timeshare company

3   ownership interests to be transferred to individuals who had no

4   intention of making payments to the timeshare companies or otherwise

5   fulfill the obligations of a timeshare transferee, including

6   Individual 1.

7         To further the scheme, defendant created, operated, and

8   controlled the following entities: (a) GT in August 2015; (b) GTS in

9   December 2015; and (c) NT in July 2017.  After these telemarketing

10  businesses were used to defraud numerous victims, many of whom

11  reported the fraud to law enforcement and/or other reporting agencies

12  like the Better Business Bureau, defendant caused articles of

13  incorporation for another telemarketing company, NES, to be filed

14  with the California Secretary of State.  To conceal his relationship

15  with NES and allow the fraud scheme to continue, defendant used co-

16  schemer ORTIZ's name to create NES and asked co-schemer ORTIZ to open

17  bank accounts in co-schemer ORTIZ's name for NES.

18        Throughout the scheme, co-schemers DUARTE, VANNOY, and DARRICK

19  MORRELL reported to defendant who was aware and approved of the use

20  of materially false and fraudulent representations in order to obtain

21  money from victims, money that defendant demanded the co-schemers

22  obtain for the Telemarketing Companies.  For example, the co-schemers

23  took the following acts, among others, at defendant's supervision:

24        • On May 3, 2017, while working for GTS, co-schemers VANNOY

25            and Morrell called victim D.P. to solicit an additional

26            $5,500 for purported "legal costs."  During the phone call,

27            co-schemer VANNOY falsely stated that he was a member of

28            GTS's "legal team" and that he had traveled to victim D.P's

timeshare company to complete settlement negotiations.  At the time of the call, co-schemers VANNOY and Morrell were in California and D.P. was in New York.

- On or before March 7, 2018, while working for NT, co-schemer DUARTE sent an email from California to victim R.G. in Oklahoma requesting an additional $4,475 fee and falsely representing that victim R.G.'s timeshare company had agreed to pay $66,725.71 in restitution to R.G.  The email further falsely stated, "this entire process is guaranteed until your case is resolved" and "this fee will be a fully reimbursed fee back by your ownership."

- On December 19, 2018, while working for NES, co-schemer VANNOY sent an email from California to victim T.C. in Connecticut soliciting an additional fee of $6,884 based on materially false statements, including that co-schemer VANNOY was "sending [victim T.C.] the details of the case [that NES was] looking to pursue" against the victim's timeshare company, falsely claiming that NES's "investigation showed evidence of a securities violation, Double backing (unauthorized rental), as well as an unauthorized release of personal information."

Defendant admits that more than $3,500,000 in actual losses were either caused directly by defendant or by his co-schemers at the Telemarketing Companies and that this conduct was reasonably foreseeable to him.

SENTENCING FACTORS

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Loss Between $3,500,000 and $9,500,000: | +18 | [U.S.S.G. § 2B1.1(b)(1)(J)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Specifically, the government reserves the right to argue that the specific offense characteristic for the conduct in this case caused substantial financial hardship under U.S.S.G. § 2B1.1(b)(2)(C) applies here, which would result in a two-level increase.  Further, the government reserves the right to argue that the following adjustments apply here: (1) offense conduct involved a large number of vulnerable victims under U.S.S.G. § 3A1.1(a), which would result in a four-level upward adjustment; and (2) defendant was an organizer or leader of criminal activity involving five or more participants under U.S.S.G. § 3B1.1(a), which would result in a four-level upward adjustment.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel –– and if necessary have the Court appoint counsel –– at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel –– and if necessary have the Court appoint counsel –– at every other stage of the proceeding.

        d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.   The right to confront and cross-examine witnesses against defendant.

        f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

        g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

1          h.   Any and all rights to pursue any affirmative defenses,

2  Fourth Amendment or Fifth Amendment claims, and other pretrial

3  motions that have been filed or could be filed.

4                  WAIVER OF APPEAL OF CONVICTION

5     16.  Defendant understands that, with the exception of an appeal

6  based on a claim that defendant's guilty plea was involuntary, by

7  pleading guilty defendant is waiving and giving up any right to

8  appeal defendant's conviction on the offense to which defendant is

9  pleading guilty.  Defendant understands that this waiver includes,

10  but is not limited to, arguments that the statute to which defendant

11  is pleading guilty is unconstitutional, and any and all claims that

12  the statement of facts provided herein is insufficient to support

13  defendant's plea of guilty.

14         LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15     17.  Defendant agrees that, provided the Court imposes a term of

16  imprisonment within or below the range corresponding to an offense

17  level of 32 and the criminal history category calculated by the

18  Court, defendant gives up the right to appeal all of the following:

19  (a) the procedures and calculations used to determine and impose any

20  portion of the sentence; (b) the term of imprisonment imposed by the

21  Court; (c) the fine imposed by the Court, provided it is within the

22  statutory maximum; (d) to the extent permitted by law, the

23  constitutionality or legality of defendant's sentence, provided it is

24  within the statutory maximum; (e) the term of probation or supervised

25  release imposed by the Court, provided it is within the statutory

26  maximum; and (f) any of the following conditions of probation or

27  supervised release imposed by the Court: the conditions set forth in

28  Second Amended General Order 20-04 of this Court; the drug testing

conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 32 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

1

<u>BREACH OF AGREEMENT</u>

2    21.   Defendant agrees that if defendant, at any time after the

3  signature of this agreement and execution of all required

4  certifications by defendant, defendant's counsel, and an Assistant

5  United States Attorney, knowingly violates or fails to perform any of

6  defendant's obligations under this agreement ("a breach"), the USAO

7  may declare this agreement breached.  All of defendant's obligations

8  are material, a single breach of this agreement is sufficient for the

9  USAO to declare a breach, and defendant shall not be deemed to have

10 cured a breach without the express agreement of the USAO in writing.

11 If the USAO declares this agreement breached, and the Court finds

12 such a breach to have occurred, then: (a) if defendant has previously

13 entered a guilty plea pursuant to this agreement, defendant will not

14 be able to withdraw the guilty plea, and (b) the USAO will be

15 relieved of all its obligations under this agreement.

16    22.   Following the Court's finding of a knowing breach of this

17 agreement by defendant, should the USAO choose to pursue any charge

18 that was either dismissed or not filed as a result of this agreement,

19 then:

20         a.   Defendant agrees that any applicable statute of

21 limitations is tolled between the date of defendant's signing of this

22 agreement and the filing commencing any such action.

23         b.   Defendant waives and gives up all defenses based on

24 the statute of limitations, any claim of pre-indictment delay, or any

25 speedy trial claim with respect to any such action, except to the

26 extent that such defenses existed as of the date of defendant's

27 signing this agreement.

28

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

23.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court; (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence; and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentencing calculations set forth above are consistent with the facts of this case.  This paragraph permits

15

both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

26. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

///

1            PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2        27.   The parties agree that this agreement will be considered

3  part of the record of defendant's guilty plea hearing as if the

4  entire agreement had been read into the record of the proceeding.

5  AGREED AND ACCEPTED

6  UNITED STATES ATTORNEY'S OFFICE
   FOR THE CENTRAL DISTRICT OF
7  CALIFORNIA

8  E. MARTIN ESTRADA
   United States Attorney

9

10 _____        April 27, 2023
   THOMAS F. RYBARCZYK                     _____
11 IAN V. YANNIELLO                        Date
   Assistant United States Attorneys

12

13 _____        _____
   MICHAEL MCDONAGH                        Date
14 Defendant

15 _____        _____
   PETER C. SWARTH                         Date
16 Attorney for Defendant MICHAEL
   MCDONAGH

17

18

19

20

21

22

23

24

25

26

27

28

                              17

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney


THOMAS F. RYBARCZYK                              Date
IAN V. YANNIELLO
Assistant United States Attorneys


MICHAEL MCDONAGH                                 Date    4/27/23
Defendant


PETER C. SWARTH                                  Date    4/27/23
Attorney for Defendant MICHAEL
MCDONAGH

17

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

MICHAEL MCDONAGH                          Date  4.27.23
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MICHAEL MCDONAGH's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____                     _____4/27/2023_____
PETER C. SWARTH                                       Date
Attorney for Defendant MICHAEL
MCDONAGH